**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| CLAUDETTE COLEMAN *et al.*, | * |
| Plaintiffs, | * |
| v. | * Case No.: GJH-18-1840 |
| | * |
| KIPP DC SUPPORTING CORPORATION, *et al.*, | |
| | * |
| Defendants. | |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Claudette Coleman's estranged husband Alan Coleman allegedly sexually abused a minor, Jane Doe, from approximately 2005 until 2009 while he was employed by Defendant KIPP DC and supervised by Defendant Susan Schaeffler Ettinger and later when he was employed by Defendant Capital City Charter School. ECF No. 1. Plaintiff Coleman brought this civil action on behalf of herself and her three minor children alleging that they suffered emotional distress upon learning of the abuse in 2016 and seeking to hold Defendants liable for failing to report Coleman's criminal conduct. *Id.* Pending before the Court are Defendants' Motions to Dismiss for lack of personal jurisdiction or for Plaintiffs' failure to state a claim. ECF Nos. 11 & 14. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendants' Motions to Dismiss for lack of personal jurisdiction are granted.

**I.    BACKGROUND[1]**

KIPP DC employed Alan Coleman as a teacher during the 2004–2005 academic year. ECF No. 1 ¶ 9. During that school year, Coleman, who was 34, began an inappropriate sexual

---
[1] Unless otherwise stated, these facts are taken from Plaintiff's Complaint, ECF No. 1, and are presumed to be true.

1

relationship with Jane Doe, one of his 14-year-old students. *Id.* ¶¶ 11–12. According to the Complaint, Defendants KIPP DC "failed to take any disciplinary action against Alan Coleman, failed to investigate the matter, failed to report the sexual abuse of Jane Doe to any authority or to take action to stop the sexual abuse," and Defendant Schaeffler Ettinger failed to supervise or monitor Coleman's interactions or activities. *Id.* ¶¶ 15, 20. Plaintiffs allege that Schaeffler Ettinger knew or suspected that Coleman was sexually abusing Jane Doe. *Id.* ¶ 72. After the school year ended, Coleman left KIPP DC and was hired by Capital City Charter School for the 2005–2006 school year. *Id.* ¶¶ 32, 59. Before hiring Coleman, Capital City performed a background check on him, which came back "clean." *Id.* ¶ 59. Coleman remained employed with Capital City until 2015. *Id.* ¶ 25. Jane Doe left KIPP DC to attend another school after her eighth-grade year. *Id.* ¶ 37. However, Coleman's sexual abuse of Jane Doe continued until June 2009. *Id.* ¶ 12. At least some of the abuse occurred in Maryland. *Id.* ¶ 18.

Plaintiff Coleman met Alan Coleman in September 2009, and the two married in December 2010. *Id.* ¶¶ 22, 24. At the time that the Colemans met, Plaintiff Coleman lived and worked in Pennsylvania. *Id.* ¶ 21. Plaintiff Coleman was not "aware of any sexual depravity concerning Mr. Coleman as a child sexual predator" when they met. *Id.* ¶ 22. They later lived in Maryland together until 2015. *Id.* ¶ 23. Plaintiff Coleman had one son from a previous relationship, Plaintiff F.T., and the Colemans had two children together, Plaintiffs D.C. (son) and D.C. (daughter). *Id.* ¶ 22, 24.

In March 2015, Coleman told Plaintiff Coleman that he was having problems with the new principal at Capital City and had decided to leave the school. *Id.* ¶ 25. He did not share his true reason for leaving Capital City with Plaintiff Coleman, which was that Capital City had fired him after receiving a report from Jane Doe that she had been abused by Coleman when she was a

2

child. *Id.* ¶ 26. After Coleman's termination from Capital City, the couple decided to relocate their family to Florida where Coleman began a new teaching position. *Id.* ¶¶ 26, 28. Capital City allegedly did not report what it had learned from Jane Doe to any law enforcement or social services agency or investigate the matter. *Id.* ¶ 27.

On May 11, 2016, armed police officers arrived at the Colemans' home in Florida and arrested Coleman based on allegations of sexual abuse of a minor. *Id.* ¶¶ 53, 56. Coleman eventually pled guilty to related charges in Montgomery County Circuit Court in Montgomery County, Maryland and the Superior Court of the District of Columbia. *Id.* ¶¶ 70–71. Plaintiffs experienced emotional distress upon learning about Coleman's sexual abuse of Jane Doe. Plaintiff F.T. "has become suicidal," and Plaintiff Coleman suffers from Post Traumatic Stress Disorder (PTSD). *Id.* ¶¶ 77–78. Plaintiffs D.C. and D.C. "are depressed and suffer humiliation on a regular basis in their community." *Id.* ¶ 79.

On June 20, 2018, Plaintiffs filed their Complaint against Defendants KIPP DC, Capital City, and Susan Schaeffler Ettinger, alleging one count of negligence. The suit also named Alan Coleman as a Defendant, but Plaintiffs subsequently voluntarily dismissed their claim against Coleman to cure a lack of complete diversity for subject-matter jurisdiction purposes. ECF No. 26. Relevant to whether this Court has personal jurisdiction over the remaining Defendants, Plaintiffs alleged that Defendants "are doing business and have the necessary minimum contracts within the state of Maryland." *Id.* ¶ 1. Defendants KIPP DC and Capital City are schools that "conduct business in the District of Columbia" with principal offices located in the District of Columbia. *Id.* ¶¶ 6–7. Defendant Susan Schaeffler Ettinger was the Principal and a Founder of KIPP DC, and she was an employee, servant, agent of KIPP DC at all relevant times. *Id.* ¶ 6. Defendants have moved to dismiss Plaintiffs' Complaint. ECF Nos. 11, 14.

## II. DISCUSSION

Defendants move to dismiss Plaintiffs' complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). A challenge to personal jurisdiction is to be resolved by "the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989) (citation omitted). Discovery and an evidentiary hearing are not required to resolve a Rule 12(b)(2) motion, however. *See generally* 5B Wright & Miller, Federal Practice & Procedure § 1351, at 274–313 (3d ed. 2004, 2012 Supp.). Rather, the Court may, in its discretion, address personal jurisdiction as a preliminary matter, ruling solely on the motion papers, supporting legal memoranda, affidavits, and the allegations in the complaint. *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *see also In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). In such a circumstance, the plaintiff need only make "a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Consulting Engineers Corp.*, 561 F.3d at 276. "In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs. Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Mylan Labs. Inc. v. Akzo N.V.*, 2 F.3d 56, 62 (4th Cir. 1993)).

Personal jurisdiction over a nonresident defendant is proper when "(1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993); *see also* Fed. R. Civ. P. 4(k)(1)(A). "In applying Maryland's long-arm statute, federal courts often state that '[the] statutory inquiry merges with [the] constitutional inquiry.'" *Dring v. Sullivan*, 423 F. Supp. 2d 540, 544 (D. Md. 2006) (collecting cases). A court's exercise of

personal jurisdiction over a defendant is consistent with due process so long as the defendant has established "minimum contacts" with the forum state such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). Put differently, the court must consider whether a defendant's contacts with the forum state are substantial enough that it "should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The standard varies, depending on whether the plaintiff seeks to establish specific or general jurisdiction. "To establish general jurisdiction, the defendant's activities in the state must have been 'continuous and systematic.'" *Carefirst of Md*, 334 F.3d at 397. Because there is no suggestion by Plaintiffs here that Defendants engaged in continuous and systematic activities within Maryland, the Court's inquiry focuses on specific jurisdiction as opposed to general jurisdiction. To establish specific personal jurisdiction, the Fourth Circuit has applied a three factor test: "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State: (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS Scan. Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

Although Plaintiffs allege in conclusory fashion that Defendants "are doing business and have the necessary minimum contacts within the state of Maryland," the only Maryland contact that Plaintiffs allege Defendants had is their relationship with Coleman. While "[e]ven a single contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact," *Carefirst of Md.*, 334 F.3d at 397, here, Plaintiffs have failed to allege that Defendants' contact with Coleman shows they purposefully availed themselves of the privilege of conducting

activities in Maryland. Although Coleman has various contacts with Maryland, Defendants employed Coleman in the District of Columbia. Additionally, Defendant KIPP DC is an agent/representative of KIPP in the District of Columbia with its principal office located in the District of Columbia. ECF No. 1 ¶ 6. There are no factual allegations in the Complaint indicating that Defendant Schaeffler Ettinger conducted business outside the District of Columbia. *See id.* And Defendant Capital City "is a not-for-profit public charter school authorized to conduct business and conducting business in the District of Columbia with its principal office" in the District of Columbia. *Id.* ¶ 7.

That Coleman lived in Maryland while he worked for Defendants only bears on Coleman's connection to Maryland, not on whether Defendants intentionally established minimum contacts with Maryland. The allegation that Defendants happened to employ a Maryland resident is insufficient to demonstrate that the Defendants purposefully took advantage of the privileges afforded to those conducting activities in Maryland. *See e.g.*, *Debt Relief Network, Inc.* v. *Fewster,* 367 F.Supp. 2d 827, 830 (D. Md. 2005) (court lacked personal jurisdiction over an out-of-state corporation where jurisdictional basis was solely that a shareholder or officer resided in the forum state).[2] Taken together, Defendants did not purposefully avail themselves of the privilege of conducting business in Maryland by hiring a Maryland resident.

---

[2] *See also Waldron* v. *Atradius Collections, Inc.,* No. 1:10-cv-551, 2010 WL2367392, at*3 (D. Md. June 9, 2010) (holding that the court did not have personal jurisdiction over the defendant despite the defendant's employment relationship with plaintiff, a Maryland resident, because the majority of the defendant's alleged contacts with Maryland were in fact the plaintiff's contacts); *Johannson Corp.* v. *Bowness Canst. Co.,* 304 F. Supp. 2d 701,705 (D. Md. 2004) (explaining that the fact that a contract exists between an out-of-state party and a party based in the forum state does not "automatically establish sufficient minimum contacts in the forum state") (internal quotation omitted).

Further, Plaintiffs' claims against Defendants do not arise out of Defendants' activities in Maryland even if they are related to Coleman's activities in Maryland. To be sure, Plaintiffs allege that at least some of Coleman's sexual abuse occurred in Maryland, *id.* ¶ 18, that Coleman lived in Maryland with Plaintiffs from 2009–2015, *id.* ¶ 23, and that Coleman pled guilty to charges of sexual abuse in Maryland, *id.* ¶ 71. But Plaintiffs claims against Defendants arise not out of Coleman's conduct, but out of acts or omissions by Defendants that occurred in the District of Columbia where Defendants conduct their business. Neither Coleman nor Jane Doe are parties to this case, and the facts related to each element of any alleged negligence by Defendants here occurred outside of Maryland. First, if Defendants owed Plaintiffs' any duty that duty arose from either Florida or District of Columbia law. *See* ECF No. 11-2 at 6–9; ECF No. 14-1 at 9. Further, any breach of that alleged duty occurred in the District of Columbia: Plaintiffs allege that Defendants failed to take certain steps to report or curtail Coleman's suspected abuse of Jane Doe, but as District of Columbia based entities, Defendants would have followed District of Columbia protocol for reporting or investigating abuse. Finally, Plaintiffs' alleged injuries did not occur in Maryland as they were not incurred until Plaintiffs learned of Coleman's abuse while living in Florida. ECF No. 1 ¶¶ 27, 53.

Finally, it would be constitutionally unreasonable for the Court to exercise personal jurisdiction over Defendants. First, it would offend traditional notions of fair play and substantial justice for the Court to exercise such jurisdiction given that Defendants have not purposefully availed themselves of Maryland protections and that Plaintiffs claims against Defendants do not arise out of conduct by Defendants in Maryland. Further, Plaintiffs' injuries occurred in Florida, not in Maryland. Additionally, Plaintiff Coleman and her son Plaintiff F.T. were not Maryland residents when they first encountered Coleman. ECF No. 1 ¶ 21.

In sum, this Court lacks personal jurisdiction over the Defendants and their Motions to Dismiss will be granted on this basis. Because Plaintiffs' Complaint must be dismissed for lack of personal jurisdiction, the Court will not address the sufficiency of the Complaint's allegations and Defendants' motions to dismiss pursuant to Rule 12(b)(6).

## III. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss for lack of personal jurisdiction are granted. A separate Order shall issue.

Date: <u>March 12, 2019</u>　　　　　　　　　　　　　/s/_____
　　　　　　　　　　　　　　　　　　　　　　　　GEORGE J. HAZEL
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge